UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALLEN THOMPSON,<br><br>Petitioner,<br><br>v.<br><br>DAVID BAUGHMAN, Warden,<br><br>Respondent. | No.  2:17-cv-0996 KJM AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the amended petition filed on November 16, 2018, ECF No. 26, which challenges petitioner's 2014 conviction for multiple sex offenses.

BACKGROUND

I.  Proceedings in the Trial Court

A.  Pretrial Proceedings

Petitioner was charged in Sacramento County Superior Court, Case Number 11F02662, with sex offenses against two minor victims.  Prior to trial, the prosecutor moved to admit evidence of uncharged prior sexual offenses under Cal. Evid. Code § 1108.[1]  The trial judge

---

[1] As discussed more fully below, § 1108 provides that evidence of a defendant's commission of another sexual offense is admissible as propensity evidence in a sex crimes case, so long as it is not otherwise inadmissible under Cal. Evid. Code § 352.

1

initially ruled that two categories of evidence were admissible under § 1108: (1) evidence of petitioner's sexual touching (attempted rape) of his sister when both were minors, and (2) acts involving the 5-year-old grandson of petitioner's adoptive parents when petitioner was 13. Later, at petitioner's request, the court reconsidered its ruling. In light of the fact that the evidence regarding petitioner's sister was being admitted, the court excluded the acts involving the boy as cumulative and because the same-sex nature of those acts might have a greater prejudicial effect. By the time of trial, however, the prosecution had been unable to locate petitioner's sister and renewed its motion to admit evidence regarding petitioner's sexual offenses against the boy. That motion was granted.

B. The Trial

1. Prosecution Case

At trial, evidence of the following facts was presented to the jury. A.G. and H.G were petitioner's stepdaughters. On March 7, 2007, when A.G. was 11 years old, she was in her room dancing when petitioner entered. He pulled her by her hair to her sister's bed, where she lay flat on her back and petitioner got on top of her. She told him to stop, but he placed both hands around her neck, causing her pain. He began to rub her breasts, and said, "you know you like it." She did not respond. He began to rub her thighs, and then rubbed her vagina under her clothes. His fingers penetrated her vagina. While touching her vagina, he repeated, "you know you like this." Petitioner made her stand up and undressed her. He put her back onto the bed, knelt on the ground, and licked her vagina. His hands were on her thighs, holding her down. He held her by the neck while he touched and kissed her breasts. He also kissed her on the mouth and touched her buttocks. The entire encounter lasted about 30 minutes, during which she was frightened and felt she could not escape. It ended when his telephone rang. She then ran to the garage and hid from him.

About a year prior to this incident, petitioner had taken A.G. and her sister H.G., then 12 or 13 years old, to the river. Petitioner directed the girls to undress. H.G. removed her shirt and bra, but A.G. did not do so until petitioner told her she had to. She only removed her shirt, but petitioner removed her bra, which made her feel "gross." Petitioner was wearing only his

underwear. H.G. suggested he remove them, but he did not. H.G. went behind a bush to relieve herself, and petitioner went to "check on her." They were gone for about 10 minutes. The next day, petitioner approached A.G. while she lay on the couch, told her H.G. had heard her tell their mother. Petitioner put his hands down her pants and touched her vagina, rubbing her vulva. She told him she had not said anything to her mother, and bit his arm to get away from him. He told her he would kill her if she told her mother.

On prior occasions, petitioner had physically abused A.G. and she had seen him physically abuse H.G. and their younger brother. She had also observed petitioner and H.G. on the couch, with their clothes partially removed and H.G. "grinding" on top of him. On another occasion, A.G. saw the two of them in bed together with petitioner on top of H.G. A.G. also recounted a time when she was seven years old and petitioner told her to pull down her pants and spread her buttocks so that he could take a picture. When she tried to take the photograph from him, he smacked her, tore up the photograph, flushed it down the toilet, and told her he would hurt her if she told her mother.

In May 2007, after A.G. reported the molestation, she moved to Idaho to live with her father. Thereafter, in September 2007, H.G. also moved to her father's house, though she went unwillingly.

Though she had repeatedly denied having an inappropriate relationship with petitioner, H.G. testified at trial that she and petitioner had a sexual relationship when she was 13 years old. Petitioner and her mother had married when H.G. was about six years old. Initially, she and petitioner did not get along, and he was physically abusive towards her. When she turned 13 and was going through puberty, he began to be nice to her. At first he would hold her hand, then he began to kiss her on the lips, neck, and chest. He began to touch her breasts and vagina when she was 13 and 14 years old. She had low self-esteem and felt he was the only person who loved her. She and petitioner had intercourse more than 10 times. Even when petitioner moved out of her mother's house following A.G.'s disclosure, H.G. continued to have a sexual relationship with him, including fellatio and intercourse. After H.G. moved to her father's house, she maintained

////

contact with petitioner. They arranged for petitioner to come to Idaho so that he and H.G. could run away together.

In October 2007, petitioner picked up H.G. from her school in Idaho and they drove off together. During the few days that they were traveling together, petitioner and H.G. kissed but did not have intercourse. Petitioner was arrested in Kansas following a traffic stop. H.G., then 14 years old and reported as a runaway, was in the car with him. She was returned to her father. Petitioner subsequently escaped custody. He was arrested again in Texas in August 2008.

A psychologist, chair of the child abuse treatment program at U.C. Davis Medical Center, testified as an expert about Child Abuse Accommodation Syndrome. He explained that abused children may delay reporting sexual abuse or falsely deny such abuse.

Daniel C., the grandson of petitioner's adoptive parents, testified that petitioner had sexual contact with him when he was about five years old and petitioner was about thirteen. On more than one occasion, petitioner took Daniel out to the chicken coop and would have Daniel touch his penis. Petitioner would also put his mouth on Daniel's penis. Petitioner's adoptive father also testified about a letter he and his wife received from petitioner in 1997, stating that he had not done to anyone else what he did to Daniel, and seeking forgiveness.

2. Defense Case

A.G.'s various statements about the reported abuse were inconsistent in their details. H.G. had made several statements denying A.G.'s reports and denying that she had sex with petitioner. A defense expert testified about proper techniques for child sex abuse interviews, and the phenomenon of false memories.

Petitioner testified in his own defense. He denied sexual contact with A.G. or H.G., while acknowledging that he sometimes got physical with them in a non-sexual way. The marks on A.G.'s neck after March 7, 2007 had been caused by a playground accident, not by petitioner. He described troubled family dynamics that would give the girls motivation to lie. A first, the girls had resented him because he was not their father. The girls' mother, Holly, was aggressive with petitioner and he had to defend himself. Holly behaved in ways that created competition and jealousy between A.G. and H.G.

4

### 3. Rebuttal Case

Holly testified that she met petitioner while he was in prison. After his release, the relationship quickly became violent. She never hit petitioner, but he hit her. Petitioner also physically abused the children, threw a can of paint and broke a window in anger, repeatedly tore the phone out of the wall, poured drinks over people's heads, and made threats. He told Holly that he would kill her if she tried to leave with the kids. She was afraid of him.

The medical social worker and deputy who had taken A.G.'s initial statements testified about those interviews and the consistency of A.G.'s accounts.

### 4. Outcome

With respect to A.G., the jury convicted petitioner of two counts of aggravated sexual assault of a child and seven counts of committing lewd acts upon a child. With respect to H.G., the jury convicted petitioner of committing five lewd acts upon a child. The jury also sustained a multiple victim enhancement. The trial court sentenced Petitioner to state prison for 390 years to life, plus a consecutive 65 years.

## II.   State Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on November 24, 2015. Lodged Doc. 19 (ECF No. 28-19).[2] The California Supreme Court denied review on February 3, 2016. Lodged Doc. 21 (ECF No. 28-21).

Petitioner filed a thirteen-claim petition for writ of habeas corpus in the Superior Court of Sacramento County on June 20, 2017, which was denied on the merits in a written decision dated October 24, 2017. Lodged Docs. 22 (petition), 23 (order) (ECF Nos. 28-22, 28-23). Petitioner then filed a twelve-claim habeas petition in the California Court of Appeal, Lodged Doc. 24 (ECF No. 28-24), which was denied without comment or citation on January 24, 2018. Lodged Doc. 25 (ECF No. 28-25).

## III.   Proceedings in this Court

This case was opened with the filing of a motion for extension of time to file a petition for

---

[2] The case was remanded for resentencing, but petitioner's challenge to his conviction was denied on the merits.

5

1   writ of habeas corpus. ECF No. 1. An initial federal petition was filed on June 20, 2017, and is
2   deemed filed on June 8, 2017 by operation of the prison mailbox rule.[3] ECF No. 7 at 6, 41. This
3   petition contained fourteen claims for relief; a copy of the superior court petition referenced
4   above, which appears to have been simultaneously submitted to the state court, is attached as
5   Exhibit A. Id. at 15-34. On September 20, 2017, petitioner filed a motion to stay proceedings in
6   this court while he continued the exhaustion process in state court. See ECF No. 14. That motion
7   did not specify the type of stay sought, and petitioner was ordered to clarify the basis for his
8   motion. ECF No. 15. Respondent then filed a motion to dismiss, which contended among other
9   things that thirteen of petitioner's fourteen claims were not exhausted. ECF No. 17. Petitioner
10  responded to the court's order with a motion for a stay under Rhines v. Weber, 544 U.S. 269
11  (2005). ECF No. 19.

    Before there was a ruling on any of the motions related to exhaustion, petitioner filed a
"request to lift the stay" on the grounds that "[his] appeal was denied." ECF No. 22 at 1 (brackets
added). Because there was no stay in place, this request was denied and the pending exhaustion-
related motions were denied as moot. ECF No. 23. Petitioner was directed to file an amended
petition containing all claims that he believed were exhausted. Id.

    The operative first amended petition was filed on November 16, 2018. ECF No. 26. It
contains argument in support of a single claim; no other claims are presented. Id. Respondent
answered on January 15, 2019. ECF No. 27. Petitioner did not file a traverse.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

    28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] See supra n. 1.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 563 U.S. at 102.

## DISCUSSION

### I. Petitioner's Allegations and Pertinent State Court Record

Petitioner challenges his conviction on grounds that his due process rights were violated by admission of an uncharged prior sexual offense pursuant to Cal. Evid. Code § 1108. That statute creates an exception to California's general prohibition of propensity evidence in criminal prosecutions. When a defendant is charged with a sexual offense, evidence of the defendant's commission of another sexual offense is admissible as propensity evidence so long as its probative value is not outweighed by prejudicial impact under Cal. Evid. Code § 352. Cal. Evid. Code § 1108(a); see also People v. Villatoro, 54 Cal.4th 1152, 1160, 1164 (2012); People v. Falsetta, 21 Cal.4th 903, 912, 915, 922 (1999).

At petitioner's trial, as noted above, the prosecutor presented the testimony of Daniel C., the grandson of petitioner's adoptive parents. Daniel testified that when he was about five years old and petitioner was about thirteen, petitioner took him out to the chicken coop and would have Daniel touch his penis. Petitioner would also put his mouth on Daniel's penis. This happened on more than one occasion. Petitioner's adoptive father also testified about a letter he received from petitioner in 1997, stating that he had not done to anyone else what he did to Daniel, and seeking forgiveness.

### II. The Clearly Established Federal Law

The erroneous admission of evidence violates due process only if the evidence is so irrelevant and prejudicial that it renders the trial as a whole fundamentally unfair. Estelle v. McGuire, 502 U.S. 62 (1991). The United States Supreme Court has rejected the argument that due process necessarily requires the exclusion of prejudicial evidence. Spencer v. Texas, 385

8

U.S. 554, 563-564 (1967); see also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that no Supreme Court precedent holds that unfairly prejudicial evidence offends due process).

### III. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The appellate court focused its analysis on the trial court's application of state law, specifically its balancing of factors related to the relative probative value and prejudicial effect of the Daniel C. evidence under Cal. Evid Code § 352. Lodged Doc. 19 (ECF No. 28-19) at 5-10. The Court of Appeal found no error in admission of the evidence. Id. It acknowledged the federal constitutional dimension of petitioner's claim, id. at 5 (appellant "further contends this error violated his state and federal constitutional due process rights to a fair trial"), but did not separately discuss the due process issue. Accordingly, the undersigned will evaluate the state court's adjudication of the federal claim as a summary denial on the merits under Richter, 563 U.S. at 102.

### IV. Objective Reasonableness Under § 2254(d)

The U.S. Supreme Court has never held that the use of propensity evidence violates due process or any other constitutional right of criminal defendants. Where there is no Supreme Court precedent that controls a legal issue raised by a habeas petitioner, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam). Accordingly, the Ninth Circuit has held that § 2254(d) bars habeas relief for a California prisoner claiming that the admission of evidence under Cal. Evid. Code § 1108 violated his federal rights. See Mejia v. Garcia, 534 F.3d 1036 (9th Cir. 2008). As in Mejia, the AEDPA bars relief here. The state court's rejection of petitioner's claim cannot have been unreasonable within the meaning of § 2254(d), because no U.S. Supreme Court precedent holds that propensity evidence—sexual or otherwise—violates the Constitution.

To the extent petitioner argues that the evidence should not have been admitted under Cal. Evid. Code §§ 1108 and 352, errors of state law do not present constitutional claims cognizable in habeas. See Pulley v. Harris, 465 U.S. 37, 41 (1984). Erroneous admission of evidence violates due process only if the evidence is so irrelevant and prejudicial that it renders the trial as a whole fundamentally unfair. Estelle, 502 U.S. 62. Petitioner has made no such showing, nor could he on the facts of this case. The testimony related to Daniel C. was quite brief, and it did not shift the focus of the trial from the charged offenses.[4] The jury was correctly instructed pursuant to California law regarding the permissible uses of prior acts evidence. Reporter's Transcript on Appeal ("RT"), Vol. 9, pp. 2426-27 (ECF No. 28-15 at 29-30). The instructions as a whole made it clear that the prosecution retained the burden of proving the offenses against A.G. and H.G. beyond a reasonable doubt.[5] The jury was specifically instructed that it could not base its verdict on the Daniel C. evidence. 9 RT 2427 (ECF No. 28-15 at 30). Finally, the testimony of A.G. and H.G. was more than enough to support petitioner's convictions beyond a reasonable doubt, even without consideration of petitioner's propensity. For all of these reasons, there was no fundamental unfairness.

## CONCLUSION

For the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[4] See 6 RT 1541-1550 (ECF No. 28-12 at 44-53) (testimony of Daniel C.); 5 RT 1384-1392 (ECF No. 28-11 at 187-195) (testimony of petitioner's adoptive father, Charles Ligon). The entire trial transcript consists of 9 volumes.

[5] The jury instructions are transcribed at 9 RT 2409-2433 (ECF No. 28-15 at 12-36).

"Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 20, 2022

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE